UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ARACELY HERNANDEZ,                                    Case No. 3:20-cv-00328-MK
                                                      **OPINION AND**
                    Plaintiff,                                  **ORDER**

        vs.

LORI HUSCHER, OCE Supervisor, *et al*.


                    Defendants.
_____

**KASUBHAI,** United States Magistrate Judge:

        Plaintiff, an adult in custody ("AIC") at the Coffee Creek Correctional Facility, brought

this lawsuit alleging that Defendants violated her right to freely exercise her religion under the

First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42

U.S.C. §§ 2000cc-1, 2000cc-2. Am. Compl., ECF No 11; Suppl. Compl., ECF No 12.[1]

Defendants moved for summary judgment. Defs.' Mot. Summ. J. 1–2, ECF No. 46 ("Defs.'

_____

[1] Plaintiff made additional claims, but in a screening order, the Court dismissed those claims
because Plaintiff failed to state a cognizable claim for relief. February 17, 2021, Opinion & Order,
ECF No. 31.

Mot."). All parties have consented to jurisdiction by a U.S. Magistrate Judge. ECF No. 22. For

the following reasons, the Court GRANTS Defendants' motion for summary judgment.

## BACKGROUND

Plaintiff has been in custody since December 2015. Am. Compl. 2, ECF No. 13. In early

2016, she converted to Islam. *Id.* Plaintiff alleged two separate violations arising out of her right

to exercise her religion. In Plaintiff's first allegation, she asserts that Defendants wrongly denied

Plaintiff Ramadan dietary accommodations in violation of the First Amendment. Suppl. Compl.,

ECF No. 12. In Plaintiff's second allegation, she asserts that Defendants wrongly confiscated her

religious property—a Quran, a prayer rug, and a hijab. Am. Compl. 11–17, ECF No. 13. [2]

## I.    Ramadan Dietary Claim

Ramadan, the ninth month of the Muslim lunar calendar, is a holy month for Muslims.

Young Decl., ¶ 5, ECF No. 49.[3] Observance of Ramadan includes a pre-dawn meal called

"suhoor." *Id.* An observer then fasts from dawn until sunset, taking no food or drink during

daylight, and then breaks the fast after sunset with a meal called "iftar." *Id.* In addition, there are

prayer recitations and readings of the Quran at prescribed times each day. *Id.*

The implementation of accommodations for observers of Ramadan are impactful on the

ODOC's budget and security. *Id.* at ¶ 6. For example, in accordance with Ramadan's religious

---

[2] Plaintiff filed a second Supplemental Complaint (ECF No. 56) on August 17, 2022, after Defendants filed their motion for summary judgment. Plaintiff's Supplemental Complaint is untimely and filed without the Court's leave. Although Plaintiff is *pro se*, since 2016, Plaintiff has been involved in 10 lawsuits where she has shown her understanding of the legal process. Thus, the Court does not consider the Supplemental Complaint in making a final determination. *See* Scheduling Order, ECF No. 24 (setting the deadline for pleadings as September 10, 2021); *also* Fed. R. Civ. P. 15(d) (allowing a party to file supplemental pleadings "[o]n motion and reasonable notice").

[3] Ramadan's significance to the Muslim faith goes beyond fasting. However, the Court limits discussion of Ramadan to its dietary restrictions, as those are the aspects of Ramadan relevant to the case.

practice, the ODOC permits observers of Ramadan to eat before dawn and after sunset (generally outside of normal eating hours) during the month of Ramadan. *Id.* Additionally, Ramadan accommodations include fruit dates for the ritual of breaking fast in the evening and may include a hot meal, typically ramen or other hot soup. *Id.* at ¶¶ 6–7. Those accommodations require a larger complement of security officers and additional administrative time to plan and execute the meals. *Id.* at 6. Thus, the ODOC requires lead time to plan and place the necessary food orders. *Id.* at ¶ 9.

After determining the signup deadline, the ODOC informs people of the signup deadlines through regular announcements. *Id.* at ¶ 10. Alternatively, an AIC may inquire with the institutional chaplains about the signup dates. *Id.* at ¶ 11; Or. Admin. R. ("OAR") 291-143-0080(5)(a) ("Religious Activity Currently Available in the Facility: An inmate desiring to participate in a religious activity that is currently available in the facility where he/she is confined may obtain information on the scheduled activity, and how to participate in it, by submitting his/her request to the facility chaplain or designee using an Inmate Communication form (CD 214).").

In 2020, Ramadan began on April 23, and the ODOC set the deadline to sign up for Ramadan accommodations as March 6. Young Decl. ¶ 13, ECF No. 49.

On May 12, 2020, Plaintiff sent an inmate communication form ("kyte") to the prison's chaplain. Am. Compl. 4, ECF No 12; Young Decl. Ex. 1, ECF No 49. In the kyte, Plaintiff stated that she had asked for Ramadan accommodations on April 11, 2020, but that she had missed the signup deadline by 5 days. Young Decl. Ex. 1, ECF No 49. On May 19, the chaplain that provides Muslim services responded to Plaintiff's kyte noting that a memo was sent out two weeks before the strictly enforced signup deadline. Young Decl. Ex. 2, ECF 49. The chaplain

further noted that although Plaintiff was not on the list to receive that memo, it was Plaintiff's responsibility to communicate with the chaplain under OAR 291-143-0080(5)(a).

Plaintiff also complained to the ODOC's director that the ODOC denied her the right to practice Ramadan because she missed the signup deadline by five days. Young Decl. Ex. 3, ECF 49. The ODOC replied to Plaintiff with a response similar to the chaplain's. Young Decl. Ex. 4, ECF 49.

On June 15, the prison's grievance office received a copy of a grievance from Plaintiff in which she complained that she had been denied Ramadan accommodations "[b]etween April 25, 2020 to May 27, 2020." Arrington Decl. ¶ 21, ECF No. The ODOC denied that grievance as untimely. *Id.* at ¶ 20.

## II.    Religious Property Claim

In 2019, Plaintiff was housed in a segregation unit from November 14 to November 26. Dishion Decl. ¶ 15, ECF No.48. In accordance with OAR 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(5), Plaintiff's personal belongings were inventoried, secured, and stored until she was released back in general population. *Id.* at ¶¶ 6, 10.

Plaintiff alleged that she possessed a Quran, a prayer rug, and a hijab. Am. Compl. 11–17, ECF No. 11. It is unclear from the record who initially secured Plaintiff's belongings. However, defendant Lieutenant Carol Dishion was responsible for inventorying Plaintiff's personal property. Dishion Decl. ¶ 13, ECF No. 48. Plaintiff's prayer rug and hijab were not a part of Dishion's inventory. Dishion Decl. Ex. 5, ECF No. 48. Plaintiff did not receive a prayer rug or hijab when she was released back to the general population. Am. Compl. 15, ECF No. 11. Plaintiff's Quran was inventoried. Dishion Decl. ¶ 14, ECF No. 48. However, Dishion confiscated it from Plaintiff and returned it to the chaplain because it did not comply with the

rule which requires that books received through the Oregon Department of Correction's ("ODOC") religious services be stamped with the AIC's name and state identification number. *Id.*; Am. Compl. 15, ECF No. 11.

After the ODOC released Plaintiff from the segregation unit, Plaintiff reviewed the property inventory and agreed that her property was not damaged or lost. Dishion Decl. Ex. 8, ECF No. 48.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

**DISCUSSION**

Defendants provide six grounds in support of their motion for summary judgment: (1) Plaintiff, under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), did not properly exhaust her administrative remedies for her Ramadan claim; (2) Plaintiff is not entitled to money damages for her RLUIPA claims; (3) defendants, Arrington, Bruns, Larkin, and Palomo did not engage in the type of conduct necessary for liability to attach under 42 U.S.C. § 1983; (4) defendants, Brault and Dishion did not violate Plaintiff's rights under RLUIPA with regard to Ramadan accommodations or religious property; (5) Defendants Brault and Dishion did not violate Plaintiff's First Amendment right to freely exercise her religion with regard to Ramadan accommodations or religious property, and (6) Defendants are entitled to qualified immunity from damages. Defs.' Mot. 2, ECF No. 46. The Court agrees with Defendant's first and second grounds in support of their motion for summary judgment and grants Defendant's motion for summary judgment. The Court need not address Defendants' remaining arguments.

I.    **Exhaustion of Remedies as to Plaintiff's Ramadan Accommodations Claim**

A.    **PLRA Exhaustion Standards**

Under the PLRA, inmates must exhaust all available administrative remedies before filing a federal action to address prison conditions or incidents. *See* 42 U.S.C § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement is mandatory and requires compliance with both procedural and substantive elements of the prison administrative process. *Woodford v. Ngo,* 548 U.S. 81, 85, 91 (2006) (stating that the PLRA exhaustion requirement requires "proper" exhaustion and compliance with "with an agency's

deadlines and other critical procedural rules"); *McKinney v. Carey*, 311 F.3d 1198, 1199-1200

(9th Cir. 2002) (per curiam). Inmates must exhaust available administrative remedies before

filing a § 1983 action, including appealing grievance decisions to the highest level. *Jackson v.*

*Fong*, 870 F.3d 928, 933 (9th Cir. 2017).

If the defendant shows that the inmate did not exhaust an available administrative

remedy, "the burden shifts to the prisoner to come forward with evidence showing that there is

something in his particular case that made the existing and generally available administrative

remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172; *see also Sapp v. Kimbrell*,

623 F.3d 813, 822 (9th Cir. 2010) (explaining that the PLRA does not require exhaustion when

administrative remedies are "effectively unavailable"); *Brown v. Valoff*, 422 F.3d 926, 937 (9th

Cir. 2005) (stating that an administrative remedy must be available "as a practical matter").

### B.    Coffee Creek Correctional Facilities' Grievance Process

AICs are informed about the ODOC's grievance review system at its "Admission and

Orientation" class when they first arrive at the facility. Arrington Decl. at ¶ 8, ECF No 47. When

filing a grievance, instructions are printed on both the grievance form and the grievance appeal

form. *Id.* at ¶ 9.

The ODOC grievances are processed in accordance with the ODOC's Administrative

Rules Chapter 291, Division 109. Arrington Decl. ¶ 6, ECF No. 47. Under the ODOC's

grievance rules, an AIC may file a grievance through two levels of appeal. *Id.*

AICs are generally encouraged to communicate with line staff verbally or in writing as

their primary means of resolving disputes prior to filing a grievance in order to handle questions

and complaints. OAR 291-109-0100(3)(a). But if that communication does not resolve the issue,

the AIC may file a grievance. *Id.* at Ex. 1; OAR 291-109-0100(3)(b). Among other things, an

AIC may grieve: "the misapplication of any departmental policies, rules, or other directives;" and "unprofessional actions of employees." OAR 291-109-0210(3)(a),(b).

Under the rules, grievances must be received by the institution grievance coordinator or designee within 14 calendar days from the date of the incident or issue being grieved, unless the AIC can satisfactorily demonstrate why the grievance could not be timely filed. OAR 291-109-205(1). An appeal of a grievance must be received by the institution within 14 calendar days from the date that the response to the grievance was sent to the AIC, unless the AIC can satisfactorily demonstrate why the initial appeal could not be timely filed. OAR 291-109-0205(3). After an appeal, an AIC may submit a final appeal. OAR 291-109-0205(5). Similarly, the final appeal must be filed within 14 calendar days from the date of the response of the appeal. OAR 291-109-0205(5).

### C.    Analysis

Plaintiff failed to timely grieve her claims related to her 2020 Ramadan accommodations request. That year, Ramadan ended May 23. ODOC received Plaintiff's grievance on June 15, 2020—22 days later.  The record reflects that Plaintiff would have been aware of Defendants' alleged failure to accommodate prior to the beginning of Ramadan as well as on any day during the month of Ramadan.  Assuming, in the light most favorable to Plaintiff's claims, that the latest date from which her 14 day grievance window opens is the last day of Ramadan, Plaintiff still did not file her grievance until 22 days after that date.  Plaintiff did not provide a reason why the grievance could not be timely filed. Furthermore, Plaintiff did not exhaust her administrative remedy of appealing the grievance nor did she file a final appeal. Thus, the Court grants Defendants' motion for summary judgment as to the Ramadan claim under the First Amendment.

II.     **Plaintiff's Religious Property and her RLUIPA Claim**

A.     **Legal Background**

RLUIPA, in relevant part, prohibits any "government" from burdening the religious

exercise of a person residing in a correctional institution. 42 U.S.C. § 2000cc–1. RLUIPA was

passed in the wake of the Supreme Court's decision in *City of Boerne v.* Flores, 521 U.S. 507

(1997), limiting congressional power under the Fourteenth Amendment to restrict governmental

interference with the exercise of religion. Congress then enacted RLUIPA pursuant to its

spending and commerce powers. *Sossamon v. Texas*, 563 U.S. 277, 281 (2011).

With respect to prisons, RLUIPA's reach is limited to prohibiting a "government" from

burdening religious exercise in correctional institutions. 42 U.S.C. § 2000cc–1. The Act goes on

to define "government" as any governmental entity created under the authority of the State, and

"any other person acting under the color of State law." § 2000cc–5(4). The Act authorizes

private citizens to assert a violation as a claim or defense in a judicial proceeding and to "obtain

appropriate relief against a government." § 2000cc–2(a).

In *Sossamon*, the Supreme Court considered the phrase "appropriate relief." 563 U.S. at

285–86. *Sossamon* concerned an action for damages against state officers in their official

capacity. The Court held that the statutory language was not sufficiently specific to abrogate

state sovereign immunity with respect to money damages. *Id.* at 285.

Similarly, the Ninth Circuit reasoned that money damages are inappropriate against

individuals who do not receive federal money *Wood v. Yordy*, 753 F.3d 899, 902–03 (9th Cir.

2014). The principal reason being the limitations of Congress's power under the Spending

Clause. *Id.* at 903. In sum, *Sossamon* and *Woods* holds that a court must grant summary

judgment when a plaintiff seeks monetary damages against individuals sued in their official or

individual capacities. *See Woods v. Staton*, 715 Fed. Appx. 768, 769 (9th Cir. 2018) (concluding that the district court properly granted summary judgment because RLUIPA does not allow for monetary damages against individuals sued in their official or individual capacities).

### B.    Analysis

Plaintiff alleges a negligence *per se* claim under RLUIPA against defendants Huscher, Hudgkinson, and Dishion in their personal and official capacities. Plaintiff's only remedy that she seeks is monetary damages. Defendants asserts that summary judgment is appropriate because RLUIPA does not authorize a suit for money damages against individuals in their personal and official capacities. Defendants' argument is well taken. Under *Sossamon* and *Wood* Plaintiff's claim is barred against the named defendants. The Court grants Defendants' motion for summary judgment.

## CONCLUSION

For the reasons above, Defendants' motion for summary judgment (ECF No. 46) is GRANTED.

DATED this 15th day of December 2022.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge